**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**ANDREW BARRETT,**

                    **Plaintiff,**

       -v-                                              **19-CV-190JLS(Sr)**

**CORRECTIONAL OFFICER MOODY, et al.,**

                      **Defendant.**

---

## REPORT, RECOMMENDATION AND ORDER

This case was referred to the undersigned by the Hon. John L. Sinatra, in accordance with 28 U.S.C. § 636(b), for all pretrial matters and to hear and report upon dispositive motions.  Dkt. #11.

Plaintiff Andrew Barrett ("Plaintiff" or "Barrett") commenced this action, *pro se*, pursuant to 42 U.S.C. § 1983, alleging the violation of his Eighth Amendment constitutional rights against cruel and unusual punishment and the use of excessive force during his incarceration at the Wende Correctional Facility ("Wende") against defendants Moody, Swindle, and Payne ("Defendants").  Dkt. #1.  The Court granted Plaintiff's motion to proceed *in forma pauperis* and screened the complaint pursuant to 28 U.S.C. § 1915.  Dkt. #3.

Currently before the Court is Defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Dkt. #37.   For the following reasons, it is recommended that the motion be granted.

## FACTUAL BACKGROUND[1]

Plaintiff's claims arise from an altercation involving Defendants' use of force against him in and around his prison cell on October 26, 2016 (the "October Altercation"). Dkt. #37-2 ¶ 1; Dkt. #39 at 3. At the times relevant to his claims, Plaintiff was an inmate at Wende in the custody of the New York State Department of Correction and Community Supervision ("DOCCS"). *Id*. Defendants were employees of DOCCS assigned to Wende. Dkt. #37-2 ¶ 2.

Neither party directly discusses what specifically occurred during the October Altercation in their statements of fact or opposition papers. *See generally* Dkt. #37-2; Dkt. #39. Defendants' use of force reports assert that Moody and Swindle approached Plaintiff's cell because it was not secured. *See* Dkt. #37-5 Ex. D at 000023. The reports then claim that Plaintiff attacked Moody without provocation, with Swindle then wrestling him to the ground in a headlock. *Id*. After continuing to resist restraints, Swindle and Moody eventually were able to handcuff Plaintiff using "body holds." *Id*.

---

[1] The following facts are taken from the Defendants' Statement of Undisputed Facts (Dkt. #37-2), Plaintiff's opposition papers (Dkt. #39), and these submissions' accompanying exhibits. Plaintiff's factual assertions generally fail to meet the requirements of Local Rule 56 by failing to respond to each specific paragraph of Defendants' Statement of Undisputed Facts. *See* Loc. R. 56. In fact, Plaintiff's opposition appears to concede the accuracy of Defendants' Statement of Facts, despite later alleging contrary facts. *Compare* Dkt. #39 at 2 (referring court to Defendants' Statement of Facts instead of asserting his own) *with* Dkt. #39 at 4 (asserting facts in direct conflict with Defendants'). However, considering Plaintiff's *pro se* status, the Court will still consider the substance of Plaintiff's argument based on the supporting facts it has pieced together from Plaintiff's opposition material. *See Wali v. One Source Co.*, 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009) ("[W]here a pro se plaintiff fails to submit a proper Rule 56.1 statement in opposition to a summary judgment motion, the Court retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions.").

Plaintiff was then put in leg irons to stop his continued attempts to kick the staff. *Id*. The reports do not appear to reference Payne.

Plaintiff, on the other hand, claims he was assaulted by Defendants. Dkt. #39 at 3. In his complaint, he alleges that the assault occurred after Payne told him to remove his "durag" while eating breakfast. Dkt. #1 at 11. After breakfast when Plaintiff was returning to his cell, he alleges Payne punched him several times, knocking him to the ground. *Id*. He then claims that Moody and Swindle arrived and began kicking him on the ground, with Payne punching him additional times as well. *Id*.

After the incident, Defendants claim that Plaintiff failed to ever submit a grievance or appeal a grievance relating to the October Altercation. Dkt. #37-2 ¶¶ 10, 11. Plaintiff concedes the accuracy of Defendants' Statement of Undisputed Facts, Dkt. #39 at 2, but proceeds to claim, without citation to any part of the record, that he submitted grievances in Wende that were "most likely" thrown out by unspecified individuals. *Id*. at 4.

Included in the aforementioned use of force reports are medical records purportedly documenting Plaintiff's injuries sustained from the October Altercation. Dkt. #37-2 ¶¶ 4-8. Plaintiff contends that these do not show the full extent of his injuries, which he claims were covered up. Dkt. #39 at 3, 4.

**DISCUSSION AND ANALYSIS**

**Summary Judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, and must give extra latitude to a *pro se* plaintiff." *Thomas v. Irvin*, 981 F. Supp. 794, 798 (W.D.N.Y. 1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or

surmise." *Bryant*, 923 F.2d at 982 (internal citations omitted).  A party seeking to defeat a motion for summary judgment

> must do more than make broad factual allegations and invoke the appropriate statute.  The [party] must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

**Failure to Exhaust**

It is recommended that Defendants' summary judgment motion be granted because Plaintiff has not established that he adequately exhausted his administrative remedies.  First, Defendants have demonstrated that Plaintiff failed to properly file a grievance or appeal a decision relating to any grievance.  And second, Plaintiff has failed to demonstrate a valid excuse for these failures.

The Prison Litigation Reform Act ("PLRA") requires an inmate to exhaust all available administrative remedies before filing suit in federal court under 42 U.S.C. § 1997e(a).  *Woodward v. Ngo*, 548 U.S. 81, 93 (2006).  "The PLRA exhaustion requirement 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'"  *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)).  To determine if a plaintiff has properly exhausted his claims, a court must "look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures." *Espinal*, 558 F.3d at 124 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)).

DOCCS has a three-tiered grievance system set forth in 7 NYCRR § 701.5. Under this system, an inmate must file a grievance within 21 days of an alleged incident. 7 NYCRR § 701.5(a)(1). The Inmate Grievance Review Committee ("IGRC") must then review and resolve the grievance within 16 days, conduct hearings if necessary, and issue a written decision within 2 days of the hearing. 7 NYCRR §§ 701.5(b)(2), 701.5(a)(3), 701.5(a)(4). If an inmate is dissatisfied with the IGRC's determination, he or she can file an appeal with the facility's superintendent within seven working days. 7 NYCRR § 701.5(b). Further appeal is made to the Central Office of Review Committee ("CORC") within seven working days of the inmate receiving the superintendent's decision. 7 NYCRR § 701.5(c)(1).

Where a grievance alleges "employee misconduct meant to annoy, intimidate, or harm an inmate," 7 NYCRR § 701.2(e), the inmate is entitled to an "expedited procedure for the review," 7 NYCRR § 701.8. While these procedures are slightly different than those discussed above, they still require a grievance to be submitted and ultimately appealed in order to be properly exhausted. *See generally*, 7 NYCRR §§ 701.8(a)-(c).

Acknowledging the "real-world workings of prison grievance systems," a prisoner's failure to exhaust may be excused when the remedy is not available in practice even if it is "officially on the books." *Ross v. Blake*, 578 U.S. 632, 643 (2016). In this regard, "an inmate is required to exhaust those, but only those, grievance

procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id*. at 642 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). A grievance procedure is "unavailable" and need not be exhausted under three kinds of circumstances: (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end — with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) when the grievance procedure is "so opaque that it becomes, practically speaking, incapable of use;" or (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 643-45; *Williams v. Correction Officer Priatno*, 829 F.3d 118, 122-24 (2d Cir. 2016).

Non-exhaustion of administrative remedies is an affirmative defense. *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004). A defendant may carry its initial burden by demonstrating an absence of records indicating any grievances or appeals were filed by a plaintiff during the relevant time period. *Bennett v. Onua*, No. 09-cv-7227(SAS), 2010 WL 2159199, at *3 (S.D.N.Y. May 26, 2010) (finding that defendants discharged their initial burden on summary judgment through affidavits demonstrating that a search of prison records indicated no grievances were ever filed); *Thomas v. Kinderman*, 9:17-cv-00425 (DNH/TWD), 2017 WL 8293605, at *5 (N.D.N.Y. Dec. 4, 2017) (initial burden carried because "[a]ccording to . . . [the] custodian of the records maintained by CORC, CORC records reveal that Plaintiff did not submit any grievance appeals to CORC in 2015."), *report and recommendation adopted*, 9:17-CV-425 (DNH/TWD), 2018 WL 1441336 (N.D.N.Y. Mar. 22, 2018). After a defendant carries this initial burden, the

"Plaintiff must then establish that the relevant exhaustion procedure was unavailable to him under *Ross*." *Thomas*, 2017 WL 8293605, at *5; *Espey v. Rice*, 16-CV-6421-CJS-JWF, 2019 WL 5290959, at *4 (W.D.N.Y. Oct. 18, 2019).

Here, Defendants have carried their initial burden demonstrating that Plaintiff did not file any grievances or appeals with the proper DOCCS entities. Defendants submit two declarations stating that a search of the appropriate databases indicates Plaintiff submitted no grievances or appeals during the relevant time period. Dkt. #37-2 ¶¶ 10, 11. Plaintiff also concedes that he did not file any grievances or appeals while at Wende by admitting to Defendants' Statement of Undisputed Facts in his opposition papers. *See* Dkt. #39 at 2. These facts are sufficient to carry Defendants' initial burden. S*ee Bennett*, 2010 WL 2159199, at *3; *Thomas*, 2017 WL 8293605, at *5.

Besides the wholly unsupported assertion that Plaintiff submitted unspecified grievances at unspecified times in Plaintiff's opposition papers, Dkt. #39 at 4, Plaintiff has set forth no evidence effectively disputing these assertions. In his deposition, Plaintiff initially admitted that he never filed a grievance, stating that he believed his discussion with Wende investigative personnel and/or his complaint to "Albany" constituted a grievance. Dkt. #37-5 Ex. C at 101:24-103:19.[2] He also stated that he was incapable of writing a grievance because he was not given a pen while in the SHU. *Id*. at 104:24-105:13 (Admitting that he "couldn't really put together a grievance and

---

[2] As the Court discusses *infra*, these non-statutory means of "exhausting" remedies are legally insufficient.

everything."). Alternatively, in seeming contradiction to these admissions, Plaintiff claims at various points in his deposition that he cannot remember if he ever wrote a grievance. *See, e.g., id*. at 104:18-23. Ignoring the apparent contradiction in his testimony, *at best*, Plaintiff's own testimony indicates he cannot remember actually filing an official grievance with Wende.

Plaintiff also fails to mention anything about appealing a grievance as well. Contrary to Plaintiff's assertion, *see* Dkt. #39 at 4, an appeal is still required for exhaustion irrespective of whether Wende actually ruled on an initial grievance. *See Cicio v. Wenderlich*, 13-CV-195S, 2017 WL 1437206, at *5 (W.D.N.Y. Apr. 24, 2017) ("Even assuming that Cicio filed an initial grievance—an assumption directly contrary to DOCCS's records—it is well settled that the lack of response to that grievance does not excuse Cicio's failure to appeal to the next level. Cicio was thus required to appeal his grievance despite the alleged lack of response."), *aff'd*, 714 F. App'x 96 (2d Cir. 2018). Accordingly, Defendants have met their initial burden for establishing non-exhaustion, and the burden now shifts to Plaintiff to show "that the relevant exhaustion procedure was unavailable to him under *Ross*." *Espey*, 2019 WL 5290959, at *4.

Plaintiff has failed to do so. As stated above, a grievance procedure is unavailable under *Ross* when: (1) "it operates as a simple dead end — with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) the grievance procedure is "so opaque that it becomes, practically speaking, incapable of use;" or (3) "prison administrators thwart inmates from taking advantage of a grievance

process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643-45.  However, Plaintiff fails to establish any of these excuses.

First, interpreting Plaintiff's arguments and the facts on record liberally, Plaintiff argues without citation to any supporting facts that any grievances he may have submitted could have been thrown away by prison officials.  *See* Dkt. #39 at 4; Dkt. #37-5 at 104:2-12.  These unsupported and speculative allegations fail to raise a reasonable dispute of fact as to any of the *Ross* excuses.  *See Benitez v. Salotti*, 6:16-CV-06219 EAW, 2020 WL 1703208, at *9 (W.D.N.Y. Apr. 8, 2020) ("Plaintiff does not submit evidence nor allege with any specificity as to when or how these documents were confiscated . . . .  Plaintiff's unsupported and unspecified statements are insufficient to create a genuine issue of material fact."); *Engles v. Jones*, 6:13-CV-6461 EAW, 2018 WL 6832085, at *10 (W.D.N.Y. Dec. 28, 2018) ("Plaintiff's unsupported assertion that he filed a grievance but that it was somehow lost or destroyed is insufficient to establish a genuine issue of material fact.").

Second, Plaintiff states in his deposition that he was not given the necessary material to submit a grievance.  Dkt. #37-5 Ex. C at 104:24-105:13.  However, Plaintiff also states that he later submitted informal grievances to prison officials and "Albany." Dkt. #37-5 Ex. C at 101:24-103:19.  A plaintiff cannot claim that the grievance process was unavailable to him due to a temporary lack of materials when the evidence suggests he successfully submitted other complaints around the same time.  *See Dublino v. Biegaj*, 19-CV-6269L, 2022 WL 170407, at *2 (W.D.N.Y. Jan. 18, 2022)

(claim that an inmate did not have writing materials for a grievance were rejected where the inmate was able to submit a different grievance on a later date); *Armand v. Simonson*, Case No. 12-CV-7709 (KMK), 2016 WL 1257972, at *22 (S.D.N.Y. Mar. 30, 2016) (lack of access to a pen and denial of grievance forms, alone, was insufficient to excuse failure to exhaust); *Rodriguez v. Cross*, No. 15-CV-1079 (GTS/CFH), 2017 WL 2791063, at *6 (N.D.N.Y. May 9, 2017) (recommending summary judgment where the plaintiff set forth "contradictory statements within the complaint pertaining to plaintiff's access to writing instruments or paper . . . . [P]laintiff asserts that he was denied a paper or pen.  However, plaintiff also states that he wrote a grievance, the grievance was destroyed by a Sergeant, and he was beaten in retaliation for writing the grievance."), *report and recommendation adopted*, 9:15-CV-1079 (GTS/CFH), 2017 WL 2790530 (N.D.N.Y. June 27, 2017).  Accordingly, considering Plaintiff's assertion that he submitted informal complaints to multiple people, his unsupported deposition testimony that he was denied access to a writing utensil is insufficient to withstand summary judgment.

And lastly, Plaintiff argues that he submitted several "grievances" in the form of informal complaints to Wende investigative personnel and/or "Albany."  Dkt. #37-5 Ex. C at 101:24-103:19.  However, it is well-settled that these informal complaints are not acceptable alternatives to the statutory grievance procedures, and are not an excuse for non-exhaustion under *Ross*.  *See, e.g., Kearney v. Gebo*, 713 F. App'x 39, 42 (2d Cir. 2017) (summary order) ("Kearney's pursuit of alternative relief from the Inspector General's Office and Commission of Correction did not render the ordinary inmate

grievance procedures 'unavailable' to him, such that he is excused from complying with those ordinary procedures."); *Cruz v. Fischer*, 175 F. Supp. 3d 33, 43 (W.D.N.Y. 2016) ("Moreover, Plaintiff's letter . . . which [was] forwarded to the Superintendent, is not a substitute for filing a grievance. [L]etters to prison officials do not satisfy the exhaustion requirement of the PLRA where the inmate has failed to follow the established grievance procedures.") (quotations omitted) (collecting cases); *Espey*, 2019 WL 5290959, at *5 ("Filing a complaint with the Inspector General does not comply with the PLRA's requirements. As for Plaintiff's claim that the Inspector General told him it was unnecessary to file a grievance, that statement is incorrect and would not have precluded Plaintiff from pursuing a grievance through the DOCCS's grievance process . . . ."); *Beauvoir v. Smith*, Civil Action No. 9:14-CV-1495 (MAD/DEP), 2017 WL 9511157, at *6 (N.D.N.Y. Aug. 30, 2017) ("For purposes of the PLRA . . . complaints filed by inmates with the OSI do not satisfy an inmate's obligation to exhaust administrative remedies."), *report and recommendation adopted*, 9:14-cv-1495 (MAD/DEP), 2017 WL 4271636 (N.D.N.Y. Sept. 26, 2017); *Merritt v. Hicks*, 9:18-cv-1067 (DNH/TWD), 2020 WL 5822274, at *11 (N.D.N.Y. Aug. 3, 2020) ("Read broadly, Plaintiff also suggests he exhausted administrative remedies by reporting the 'attacks' to nurses and medical staff and writing letters detailing the incidents to Koenigsmann and the CORC Director. This sort of circumvention of the IGP, however, has been consistently rejected by courts in this Circuit under the PLRA."), *report and recommendation adopted*, 9:18-CV-1067 (DNH/TWD), 2020 WL 5821496 (N.D.N.Y. Sept. 30, 2020); s*ee also Ross*, 578 U.S. at

639 (generally discussing the Supreme Court's rejection of "every attempt to deviate . . . from [the PLRA's] textual mandate" regarding acceptable grievance procedures).[3]

Accordingly, because Defendants have established the affirmative defense of non-exhaustion and Plaintiff has failed to demonstrate an excuse for this non-exhaustion under *Ross*, summary judgment is appropriate based on Plaintiff's failure to exhaust his administrative remedies.

**Evidence of Excessive Force**

Additionally, Defendants argue that summary judgment is warranted because Plaintiff has failed to establish any evidence, besides his own testimony purportedly inconsistent and contradicted by the record, that Defendants used excessive force. Dkt. #37-1 at 9 (citing *Jeffreys v. City of N.Y.*, 426 F.3d 549, 554 (2d Cir. 2005)). However, the circumstances of this case do not conclusively establish that no reasonable jury could credit Plaintiff's allegations of excessive force. Accordingly, this argument does not support granting summary judgment.[4]

---

[3] In his opposing memorandum of law, Plaintiff claims that he won an "infraction hearing" relating to the October Altercation. Dkt. #39 at 2. However, even favorable rulings through alternate "grievance" channels do not excuse a plaintiff's failure to follow statutory grievance procedures. *See Miller v. Annucci*, No. 17-CV-4698 (KMK), 2021 WL 4392305, at *13 (S.D.N.Y. Sept. 24, 2021) ("The Second Circuit has no rule 'that a prisoner has exhausted his administrative remedies every time he receives his desired relief through informal channels.' It has held the opposite: that Plaintiff must 'grieve his mistreatment before filing suit despite the relief afforded' through informal channels.") (quoting *Ruggiero v. County of Orange*, 467 F.3d 170, 177–78 (2d Cir. 2006)), *reconsideration denied*, No. 17-CV-4698 (KMK), 2022 WL 125807 (S.D.N.Y. Jan. 13, 2022).

[4] Plaintiff states in his opposition papers that "summary judgment is warranted under *Jeffreys*." Dkt. #39 at 2. However, "*pro se* litigants must be given extra latitude,

In *Jeffreys*, the Second Circuit stated that:

> While it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether 'the jury could reasonably find for the plaintiff,' and thus whether there are any 'genuine' issues of material fact, without making some assessment of the plaintiff's account. Under these circumstances, the moving party still must meet the difficult burden of demonstrating that there is no evidence in the record upon which a reasonable factfinder could base a verdict in the plaintiff's favor.

*Id*. (internal citation omitted) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986)). However, the Second Circuit has warned about over-applying *Jeffreys*. *Frost v. New York City Police Dep't*, 980 F.3d 231, 246 (2d Cir. 2020) ("[T]he district court extended *Jeffreys* too far. As we have said, the *Jeffreys* exception is narrow, and it applies only 'in the rare circumstance where' a witness's testimony is so problematic that no reasonable juror could credit it.") It is not enough that a plaintiff's testimony be self-serving or even uncorroborated by the record. *See Adamson v. Miller*, 808 F. App'x 14, 16 (2d Cir. 2020) (summary order) ("Nor could the district court have properly disregarded Adamson's testimony on the ground that it was simply incredible . . . . Adamson's testimony, although not corroborated by other evidence, was not 'contradictory and incomplete,' nor was it 'so replete with inconsistencies and improbabilities that no reasonable juror' could credit it.") (quoting *Bellamy v. City of New York*, 914 F.3d 727, 746 (2d Cir. 2019)). Where a plaintiff's testimony is substantively

---

particularly on a summary judgment motion." *Thomas v. New York State Dep't of Corr. Servs., Div. of Corr. Indus.*, No. 00 Civ. 7163(NRB), 2006 WL 435718, at *4 (S.D.N.Y. Feb. 23, 2006) (citing *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir.1999)). Considering Plaintiff clearly did not understand the legal ramifications of this supposed admission, the Court will assess the merits of Defendants' summary judgment argument relating to this issue.

consistent, minor discrepancies combined with record evidence opposing the plaintiff's story will still be insufficient to justify summary judgment.  *See Mael v. Howard*, No. 18-CV-378 (JLS) (LGF), 2022 U.S. Dist. LEXIS 15783, at *17 (W.D.N.Y. Jan. 27, 2022) (Where plaintiff offered inconsistent testimony regarding where and how she was allegedly dragged while handcuffed, "neither version of Mael's account . . . undermines her core claim: that she was dragged . . . .  [A]lthough there is more evidence in the record consistent with Richard's version of events, the court cannot take a side at the summary judgment stage.") (quotations omitted).

Here, Defendants have failed to point out what portion of Plaintiff's testimony is so "contradictory" or "replete with inconsistencies" that it is incredible as a matter of law. *Bellamy*, 914 F.3d at 746.  Instead, Defendants point to medical records purportedly weighing against Plaintiff's rendition of the October Altercation.  *See* Dkt. #37-1 at 10-13; Dkt. #41 at 9, 10.  This evidence, and Defendants' accompanying arguments, fail to demonstrate any inconsistencies in Plaintiff's statements, much less any that are so dramatic they warrant discarding Plaintiff's testimony at the summary judgment stage. *See Jeffreys*, 426 F.3d at 552 (affirming grant of summary judgment where plaintiff's claim was based on being thrown out a window, but he admitted "on at least three occasions" that he jumped out of the window to avoid police).  Here, Defendants do not set forth any substantively inconsistent renditions of the October Altercation by Plaintiff that fundamentally contradict his claim, that he was improperly beaten by Defendants.

Instead, Defendants rely entirely on the medical records to meet the summary judgment standard, which are insufficient. Generally, record evidence being more supportive of a defendant's account of an event is not enough to grant summary judgment. *Randolph v. Griffin*, 816 F. App'x 520, 523-24 (2d Cir. 2020) ("[T]he district court also erred by reconciling the conflicting versions of the incident and viewing the evidence in favor of defendants . . . . Here, the district court determined 'that the record evidence of Randolph's injuries is more consistent with Defendants' version.' This was error. Although stating that it was not 'reconciling the parties' competing versions of the incident,' the district court did just that by crediting defendants' account of the assault.") (quoting *Jeffreys*, 426 F.3d at 551). Furthermore, medical evidence indicating a plaintiff's injuries are not very severe does not warrant summary judgment without further supporting facts. *Frost*, 980 F.3d at 254 n.21 ("[D]efendants resist this conclusion by arguing that Frost did not sustain significant injuries from being kicked in the ribs or dragged across the floor. But even assuming this is true, the extent of an inmate's injuries, while relevant to the excessive force inquiry, is not dispositive.") (citing *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (recognizing that "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury")).

Medical records can warrant summary judgment when they "conclusively show[]" that a plaintiff's personal testimony is false. *See Bradshaw v. City of N.Y.*, 855 F. App'x 6, 9 (2d Cir. 2021). In *Bradshaw*, the Second Circuit noted that, "[a]s to Bradshaw's other claims of excessive force, Bradshaw's sworn testimony sharply conflicts with that

of the officer defendants.  The district court granted summary judgment on the ground that 'Mr. Bradshaw fails to point to any evidence in support of his claims beyond his own deposition testimony — which alone cannot withstand a summary judgment motion.' That is not accurate as a general statement of the law." *Id*. (citation omitted).  The court went on to affirm the grant of summary judgment against the plaintiff's claims that he was punched because video evidence of the altercation "conclusively show[ed]" that he was not punched.  *Id*. at 10.  However, the court reversed the grant of summary judgment against the plaintiff's claim relating to his broken finger, because "[a]lthough the medical evidence showed that Bradshaw's finger was not actually broken, Bradshaw also testified that Tebbens threatened to break his finger, and then twisted and bent it painfully.  Bradshaw's and Tebbens's hands are obscured during portions of the video submitted by defendants.  Accordingly, we cannot say with the requisite degree of certainty that Bradshaw's factual assertion is, as a matter of law, something that no rational jury could accept."  *Id*.

Here, the medical records Defendants rely on do not "conclusively show[]" that summary judgment is warranted.  *Id*. at 9.  The written medical reports submitted by Defendants note that Plaintiff had abrasions on his right arm, left shoulder, and left eye, and scratches on his chest.  Dkt. #37-1 at 12; Dkt. #37-5 Ex. D.  The accompanying photos do not conclusively confirm or deny these written notes, as they are generally low quality and lack color.  *See* Dkt. #37-5 Ex. D.  While a fact-finder may decide that the written reports are credible, then infer that the described injuries are too inconsistent with Plaintiff's rendition of the October Altercation to make Plaintiff's story believable,

this evidence is not conclusive enough to make these determinations at the summary judgment stage. These facts are closer to the finger injury in *Bradshaw* than the face injuries in that case, since there is no direct evidence here that Plaintiff was not actually beaten like the video revealed in *Bradshaw*. *Bradshaw*, 855 F. App'x at 10. Instead, the pictures and reports in this case could, at best, merely imply that Plaintiff's story is false.

The Court cannot "reconcile[e] the conflicting versions of the incident" by deeming the "record evidence of [Plainitff's] injuries [] more consistent with Defendants' version" of the October Altercation. *Randolph*, 816 F. App'x at 523-24. Accordingly, summary judgment is inappropriate based on this issue.

### Plaintiffs "Motion to Go Home"

The Court also notes that Plaintiff has filed a document titled "[m]otion to go home." Dkt. #47. The Court has reviewed this one-page submission. Even considering Plaintiff's *pro se* status and construing all possible legal arguments set forth in this document liberally, *McPherson*, 174 F.3d at 280, the Court finds no discernable request for relief in this purported "motion." Accordingly, to the extent this document is considered a "motion," this Court recommends that it be denied.

### CONCLUSION

For the foregoing reasons, it is recommended that Defendants' summary judgment motion (Dkt. #37) be GRANTED.

Therefore, it is hereby ORDERED pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72(b).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order</u>. *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." <u>Failure to comply with the</u>

<u>provisions of Rule 72(b) may result in the District Judge's refusal to consider the objection.</u>

The Clerk is hereby directed to send a copy of this Report, Recommendation and Order to the attorneys for the parties.

**SO ORDERED.**

**DATED:** **Buffalo, New York**
**February 23, 2023**

<u>*/s H. Kenneth Schroeder, Jr.*</u>
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**